UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

REGIONAL LOCAL UNION NOS.                Case No. 3:13-cv-2272-AA
846 and 847, International
Association of Bridge,                       OPINION AND ORDER
Structural, Ornamental and
Reinforcing Iron Workers,
AFL-CIO, et al.,

        Plaintiffs,

   v.

VALENTINE STEEL SERVICE,
INC., a Texas corporation,

        Defendant.

_____

AIKEN, Chief Judge:

    Plaintiffs Regional Local Union Nos. 846 and 847,

International Association of Bridge, Structural, Ornamental and

Reinforcing Iron Workers, AFL-CIO (Local Unions) and plaintiffs

Regional District Council Welfare Plan and Trust (Welfare

Trust), Regional District Council Retirement Plan and Trust

(Retirement Trust), Regional District Council Training Trust

1 - OPINION AND ORDER

(Training Trust), and Regional District Council Vacation Trust Fund (Vacation Trust) (collectively, the Plaintiff Funds) filed suit pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq, and the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. §§ 151, et seq. Defendant Valentine Steel Services, Inc. (Valentine) moves to dismiss plaintiffs' claims for lack of personal jurisdiction; alternatively, Valentine moves to transfer venue. The motion to transfer is granted.[1]

### BACKGROUND

Plaintiffs are two labor unions and four employee benefit plans. The employee benefit plans, the Plaintiff Funds, are administered in Oregon. Valentine is a Texas corporation doing business in Texas.

Plaintiffs allege that Valentine is a signatory to a Collective Bargaining Agreement (CBA) with the Local Unions signed on January 19, 2012. Compl. ¶ 13 & Ex. 1. Under the CBA, plaintiffs allege that Valentine agreed "to the establishment of and to be bound by certain Trusts establishing the Plaintiff

---

[1] The court notes that the same plaintiffs filed a nearly identical lawsuit in the Court against a different defendant. See Reg'l Local Union Nos. 846 & 847 v. Jayco Steel Service, Inc., No. 3:13-cv-02267-ST. There, defendant Jayco Steel filed a nearly identical motion to dismiss or transfer venue, and Magistrate Judge Stewart similarly recommends that the motion to transfer be granted.

Funds." Id. ¶ 15. According to plaintiffs, the trust documents for the Plaintiff Funds were incorporated into the CBA "as they existed at the date of the Agreement" and "as may be amended from time to time"; plaintiffs thus contend that Valentine is bound by the trust documents as a signatory employer to the CBA. Id. ¶ 16.

The CBA requires Valentine to pay monthly fringe benefit contributions for each hour worked by each employee covered by the CBA and to file a report of its hours. Id. ¶¶ 18, 20. Further, the CBA requires Valentine to forward monthly "check-off dues" and working assessments, along with a list of covered employees, to the Local Unions. Compl. ¶¶ 28-29. The Plaintiff Funds are the authorized collection agent for contributions and deductions under the CBA and related trust documents, and the William C. Earhart Company in Portland, Oregon, administers the Plaintiff Funds and processes the check-off payments. Id. ¶¶ 11-12, 30. The Plaintiff Funds and the Local Unions allege that Valentine has not remitted the required fringe benefit contributions or check-off dues. Id. ¶¶ 23, 32.

Based on their status as employee benefit plans, the Plaintiff Funds filed suit under ERISA to obtain an audit and recover unpaid contributions owed from Valentine (Count I). Based on their status as employee organizations, the Local Unions filed suit under the LMRA to obtain an audit and recover

3 - OPINION AND ORDER

unpaid check-off amounts owed from Valentine (Count II). Plaintiffs also seek declaratory judgment, interest on the amounts due and owing, liquidated damages, and attorney fees.

**DISCUSSION**

I.  <u>Personal Jurisdiction</u>

Valentine first moves to dismiss this action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Valentine maintains that it is a Texas corporation, domiciled in Texas, conducting business exclusively in Texas, and that it has no minimum contacts with the State of Oregon. Van Meter Aff. ¶¶ 3-5, 10. Further, Valentine contends and plaintiffs do not dispute that the Local Unions and Valentine negotiated, signed and executed the CBA in Houston, Texas. <u>Id.</u> ¶ 7. Further, Valentine maintains that no work pursuant to the CBA was performed in Oregon and that the job sites were located in and around Houston, Texas. <u>Id.</u> ¶ 8. Thus, Valentine contends that this court lacks personal jurisdiction over it.

"Personal jurisdiction over a defendant may be acquired in one of two ways: by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction." <u>Cripps v. Life Ins. Co of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."

4 - OPINION AND ORDER

Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). A
plaintiff may do so through a "prima facie showing of the
jurisdictional facts." Id. (quoting Sher v. Johnson, 911 F.2d
1357, 1361 (9th Cir. 1990)). Plaintiffs argue that Valentine is
bound by the forum selection clauses in the Welfare Trust and
Retirement Trust, because those trust documents and all
amendments thereto were incorporated into the CBA. Plaintiffs
thus contend that Valentine consented to personal jurisdiction
and venue in the District of Oregon by signing the CBA.

The Welfare Trust and the Retirement Trust, as amended in
2014, both contain the following section regarding jurisdiction
and venue:

> Each current and former Contributing Employer (as
> defined in Section 1.10) consents to personal
> jurisdiction and venue in the United States District
> Court for the District of Oregon, or such place as
> prescribed by ERISA, with respect to any suit filed by
> the Trust in that forum of any nature (including suits
> involving fringe benefit contributions or a demand for
> any audit) and agrees that said forum is the most
> convenient forum for such suit.

Welfare Trust and Retirement Trust, art. VII, § 7.12 (Parker
Aff. Ex. 1 at 27, Ex. 2 at 27). Plaintiffs are correct that the
CBA incorporates "various trust documents" as they existed when
the CBA was signed, as well as any future amendments to them:

> The terms of the various trust and plan documents as
> they currently exist, and as they may be amended by
> the trustees from time to time during the term of this
> Agreement[,] are incorporated herein and shall apply
> to the signatory Employer.

5 - OPINION AND ORDER

CBA, art. XVII, § 9 (Compl. Ex. 1 at 10). Plaintiffs contend that this language incorporates the trust documents for the Plaintiff Funds, thus binding Valentine to the forum selection clauses of the Welfare Trust and Retirement Trust.

However, Valentine emphasizes that the plain language of the CBA contemplates the establishment of future contribution plans between Valentine and the Local Unions rather than adherence to existing ones. For example, article 17, section 1 of the CBA provides:

> The Employer and the Union have agreed *to the establishment of a jointly-administered defined contribution plan to be established pursuant to Trust and named the Rebar Retirement Plan and Trust.* The Employer agrees to be bound by the terms of the Trust and the rules adopted by the Trustees. The Trust shall be administered by three (3) Employer and three (3) Union Trustees. The initial Employer Trustees shall be appointed by the majority of the signatory contractors. The Union Trustees shall be appointed by the International President of the Union and shall serve at his pleasure.

CBA art. XVII, § 1 (Compl. Ex. 1 at 8) (emphasis added). Article 17, section 2 similarly refers to the parties' agreement "to the establishment of a jointly-administered health and welfare plan *to be established pursuant to Trust and named the Local 846 Rebar Welfare Trust.*" Id. art. XVII, § 2 (emphasis added).[2]

---

[2] Prior to 2008, the Retirement Trust was known as the "Rebar Retirement Plan and Trust," and the Welfare Trust was known as the "Local 846 Rebar Welfare Trust." According to plaintiffs, the Retirement Trust and Welfare Trust remain the same legal entities despite the 2008 name change. Compl. ¶¶ 2-5.

Valentine contends that no "defined contribution plan" was ever established under the CBA, and that no trustee was ever appointed under the CBA. Van Meter Reply Aff. ¶¶ 5-8. Thus, Valentine argues that it is not bound by the forum selection clauses.

I agree with Valentine that the plain language of the CBA contemplates the future establishment of contribution plans, raising questions as to the parties' intent. Even though article 17, section 9 references "various trust and plan documents as they currently exist," it is unclear whether that language refers to the plans and trusts "to be established" under sections 1 and 2 or other, existing plans. Notably, the CBA does not reference the Plaintiff Funds by their current names, even though they were renamed approximately four years before the CBA was signed. In addition, as noted by Magistrate Judge Stewart, "the Welfare Trust and Retirement Trust were amended in July 2014, leaving the record silent as to whether the forum-selection provision was in effect when this lawsuit was filed." See Reg'l Local Union Nos. 846 & 847 v. Jayco Steel Service, Inc., No. 3:13-cv-02267-ST (doc. 35 at 6).

While forum-selection clauses are enforceable if "freely negotiated" and not "unreasonable and unjust," M/S Bremen v. Zapata off-Shore Co., 407 U.S. 1, 15-16 (1972), I find that Valentine has submitted sufficient evidence to create an issue

7 - OPINION AND ORDER

of fact as to whether it is bound by the forum selection clauses in the Welfare Trust and Retirement Trust. It may well be that the ambiguities noted above are simply the result of sloppy contract-drafting, and the parties knew and intended that the CBA incorporate the trust documents for the Plaintiff Funds. Regardless, the fact remains that the language of the CBA contemplates the future establishment of contribution plans, raising factual issues as to whether the CBA incorporated the Plaintiff Funds and whether Valentine is bound by their forum selection clauses. Resolution of those issues requires findings of fact that are inappropriate at this stage of the proceedings, and I decline to enforce the forum selection clause under these circumstances.

Plaintiffs also argue that personal jurisdiction is established pursuant to ERISA's provision for nationwide service. I agree.

ERISA provides for nationwide service of process and thus establishes personal jurisdiction over a defendant who has minimum contacts with the United States. 29 U.S.C. § 1132(e)(2) (an ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found"); Cripps, 980 F.2d at 1267 ("Personal service is normally

8 - OPINION AND ORDER

effective only within the boundaries of the state in which the federal court sits; however, federal statutes may provide for nationwide service of process. The ERISA statute so provides."). Here, Valentine was served in Texas and has minimum contacts with the United States. Therefore, ERISA affords personal jurisdiction over Valentine in this district, regardless of whether Valentine has minimum contacts with Oregon.

Valentine responds that reliance on ERISA is inappropriate, because the record does not establish that Valentine ever established or maintained an employee benefit plan under ERISA. However, this argument goes to the merits of Count I and whether Valentine is required to submit fringe benefit contributions under the CBA. At this stage of the proceedings, I find that the Plaintiff Funds have alleged a plausible ERISA claim which provides for personal jurisdiction over Valentine.

Likewise, this Court may exercise personal jurisdiction over Valentine with respect to plaintiffs' LMRA claim. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).

9 - OPINION AND ORDER

## II.  **Venue**

Alternatively, Valentine moves for transfer of venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Under both ERISA and the LMRA, venue is proper in this district. 29 U.S.C. § 1132(e)(2); 29 U.S.C. § 185(a). Although a plaintiff's choice of forum generally is afforded deference in ERISA cases, such deference is one of several factors a court must consider when ruling on a motion to transfer. Jacobson v. Hughes Aircraft Co., 105 F.3d 1288, 1302 (9th Cir. 1997), rev'd on other grounds, 525 U.S. 432 (1999). The court has discretion to determine whether factors related to convenience and fairness warrant transfer of venue. 28 U.S.C. § 1404(a); see Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir 2000). In such cases, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); see also Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc., 357 F. Supp. 2d 54, 56 (D.D.C. 2004) ("Plaintiff's venue selection is given even *greater* deference in ERISA cases, as ERISA's special venue provision . . . reflects Congress' intention to protect the financial integrity of such pension funds by allowing these funds to bring all collection suits in their home districts.").

Private interest factors relevant to transfer include the convenience and ease of obtaining witnesses and documents "and all other practical problems that make trial of a case easy, expeditious and inexpensive." Decker Coal Co., 805 F.2d at 843 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Public interest factors include "court congestion," the "local interest in having localized controversies decided at home," avoiding conflict of laws, and "the unfairness of burdening citizens in an unrelated forum with jury duty." Id. (citations omitted). Generally, the court may consider the following:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

GNC Franchising, Inc., 211 F.3d at 498-99.

Here, the CBA was negotiated and signed in Texas, and no Valentine representative ever traveled to Oregon to negotiate the CBA. Van Meter Aff. ¶ 7. Neither representative of the Local Unions who signed the CBA resides in Oregon; one resides in Texas, and he is no longer employed by the Local Unions. Id. ¶¶ 11-14. In fact, it appears that none of the witnesses involved in the CBA are located in Oregon, and no construction work was

11 - OPINION AND ORDER

performed pursuant to the CBA in Oregon. Id. ¶ 8. Therefore, all of the events giving rise to the CBA occurred in Texas between individuals who reside mostly in Texas, and it is questionable whether this Court could compel the appearance of at least one of those witnesses.

I recognize that electronic discovery and videoconferencing render "the ease of access to sources of proof" less significant in terms of convenience. See Nat'l Shopmen Pension Fund v. Stamford Iron & Steel Works, Inc., 999 F. Supp. 2d 229, 233 (D.D.C. 2013). At the same time, the primary witnesses and documents relevant to the validity of the CBA are located in Texas and could be beyond the subpoena power of this court. Moreover, the costs of litigation would be the same, if not lower, in Texas given the proximity of witnesses. I therefore find that a change of venue would not improperly "shift the inconvenience" from Valentine to plaintiffs. Tri-State Interiors, 357 F. Supp. 2d at 57. Finally, the parties do not raise court congestion, both districts are familiar with the governing federal law, and the remaining factors are neutral.

As a result, the Southern District of Texas is the most convenient forum with respect to the parties' contacts, the negotiation of the relevant agreement, the availability of compulsory process, and the ease of access to sources of proof.

12 - OPINION AND ORDER

Accordingly, I find that Valentine has made a showing of inconvenience that strongly outweighs plaintiff's choice of forum and supports transfer.

## CONCLUSION

Valentine's Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Transfer Venue (doc. 22) is GRANTED, in part. The motion to transfer is GRANTED and this action is HEREBY TRANSFERRED to the United States District Court for the Southern District of Texas.

DATED this _17th_ day of March, 2015.

Ann Aiken
United States District Court